IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| RICKY FRANKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 12-1457-JAR |
| | ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Carolyn W. Colvin, Commissioner of Social Security,[1] denying Plaintiff Ricky Franks' application for a period of disability and disability insurance benefits under Title II of the Social Security Act.[2] Upon review, the Court finds that the underlying decision is supported by substantial evidence in the record, and thus affirms the decision of the Commissioner.

## I. Procedural History

On December 15, 2009, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging disability beginning September 2, 2009. His application was denied initially and upon reconsideration. Plaintiff timely requested a hearing before an administrative law judge (ALJ). After a hearing, the ALJ issued a decision in August 2011, finding that Plaintiff was not disabled; in October 2012, the Appeals Council denied

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

[2]42 U.S.C. §§ 401–434.

1

Plaintiff's request for review of the ALJ's decision. Plaintiff then timely sought judicial review before this Court.

## II. Standard for Judicial Review

Judicial review under 42 U.S.C. § 1383(c)(3) is limited to whether the defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.[3] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of defendant.[5]

## III. Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[6] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[7] The Secretary has established a five-step sequential evaluation process to determine whether a claimant is

---

[3]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[4]*Id.* (quoting *Castellano*, 26 F.3d at 1028).

[5]*Id.*

[6]42 U.S.C. §§ 423(d)(1)(A), 416(i), 1382c(a)(3)(A).

[7]*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

disabled.[8]  If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[9]

## IV.  Discussion

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of September 2, 2009.  Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe" impairments: moderate cervical disc protrusion, degenerative disc disease of the cervical spine, and carpal tunnel syndrome.  Plaintiff does not challenge the ALJ's determination at step three that Plaintiff's impairments or combination of impairments do not meet or medically equal listings 1.02 and 1.04.[10]

Plaintiff does challenge the ALJ's determination at step four of Plaintiff's residual functional capacity (RFC).  At step four, an "'ALJ must evaluate a claimant's physical and mental [residual functional capacity ("RFC")].'"[11]  The RFC represents "the most that the claimant can still do despite her limitations, and must include all of the claimant's medically determinable impairments."[12]

**Substantial evidence supported ALJ's RFC finding**

---

[8]20 C.F.R. § 416.920(a); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

[9]*Thompson*, 987 F.2d at 1486.

[10]20 C.F.R. Pt. 404, subpt. P., app. 1, Listing of Impairments.

[11]*DeWitt v. Astrue*, 381 F. App'x 782, 784 (10th Cir. 2010) (quoting *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008)); SSR 96-8p, 1996 WL 374184, at *1–2 (July 2, 1996).

[12]*DeWitt*, 381 F. App'x at 784 (quotation and citations omitted).

3

The ALJ determined that Plaintiff can perform less than the full range of light work, and can: occasionally lift twenty pounds and frequently lift ten pounds; and stand/walk/sit for six hours in an eight-hour workday, with the need to alternate between sitting and standing at least every thirty minutes. The ALJ determined that Plaintiff cannot climb ladders, ropes or scaffolds, and is capable of only occasional rotation, flexion, or extension of the neck; and only occasional bilateral fingering. The ALJ further determined that Plaintiff should avoid concentrated exposure to extreme cold and excessive vibration.

Rather than Plaintiff identifying with specificity the ALJ's so-called erroneous findings concerning his limitations and abilities, and rather than identifying which findings are not tied to the evidence, Plaintiff offers a general challenge to the sufficiency of the ALJ's discussion. Plaintiff argues that contrary to the requirements of SSR 96-8p,[13] the ALJ failed to provide a narrative discussion of her determination of Plaintiff's RFC. SSR 96-8p provides in pertinent part that,

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . . The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.
> . . . .
> The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.[14]

Contrary to Plaintiff's argument, the ALJ did provide a narrative discussion of the

---

[13]SSR 96- 8p, 1996 WL 374184, at *7 (July 2, 1996).

[14]*Id.*

medical and nonmedical evidence she relied upon in determining Plaintiff's RFC.  The ALJ discussed Plaintiff's subjective reports of his limitations and abilities, noting that Plaintiff reported that he could lift no more than forty-five pounds, could sit no more than forty minutes before standing to stretch, could stand no longer than thirty minutes, and could not walk in "high amounts," nor walk "any longer than the distance across the grocery store."  The ALJ explained that she only gave some credence to these claims, finding that while there was evidence that Plaintiff's alleged symptoms and limitations existed, or could reasonably be expected to exist, Plaintiff's claims concerning the intensity, persistence and limiting effects of these symptoms were not credible, in light of other evidence.  The ALJ then discussed the other evidence, including nonmedical evidence in the form of Plaintiff's self-reporting of his daily activities, and medical evidence in the form of records from Plaintiff's treating physicians and opinions of the state agency physicians.  In fact, as the Tenth Circuit stated in *Poppa v. Astrue*,[15] " the ALJ's credibility and RFC determinations are inherently intertwined."[16]  And the ALJ sufficiently explained Plaintiff's alleged symptoms and limitations and why she partially discredited the same, based on the medical and nonmedical evidence that informed her RFC determination.  In so doing, the ALJ properly relied upon the requisite evidentiary sources, for the RFC is not based solely on medical evidence; rather, it is based on all credible evidence of record, including Plaintiff's medical history and treatment, objective evidence, and Plaintiff's daily activities.[17]

---

[15] 569 F.3d 1167 (10th Cir. 2009).

[16] *Id.* at 1171.

[17] The RFC is not based solely on medical evidence; rather, it is based on all credible evidence of record, including Plaintiff's medical history and treatment, objective evidence, and Plaintiff's daily activities. *See* 20 C.F.R. § 404.1545(a); SSR 96-8p.

Plaintiff does not specifically challenge the ALJ's RFC determination; rather Plaintiff generally argues that the ALJ's RFC findings were not tied to the evidence. But this argument fails, just as the argument that the ALJ did not engage in a narrative discussion fails. First, the Tenth Circuit has specifically "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category."[18] Nor is there a "requirement in the regulations for a direct correspondence between the RFC finding and a specific medical opinion on the functional capacity in question."[19] And, as the court observed in *Topper v. Colvin*,[20] when confronted with a similar argument challenging the sufficiency of the ALJ's narrative discussion, nor does SSR 96-8p require citation to a medical opinion, or even to medical *evidence* in the administrative record for each RFC limitation assessed.[21]

Nonetheless, the ALJ tied her RFC findings to the evidence in a sufficiently extensive narrative discussion of the medical as well as nonmedical evidence. With regard to Plaintiff's carpal tunnel syndrome, and the corresponding limitations on lifting, bilateral fingering, and climbing, the ALJ found that the medical evidence established that Plaintiff had carpal tunnel syndrome. But the medical evidence also demonstrated that the carpal tunnel syndrom presented with mild, occasional and stable symptoms that were not worsening. Specifically, in September 2008, an EMG revealed that Plaintiff had bilateral carpal tunnel syndrome and mild left ulnar

---

[18]*Chapo v. Astrue*, 682 F.3d 1285, 1288–89 (10th Cir. 2012) (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).

[19]*Id.*

[20]No. 12-1119-JWL, 2013 WL 2458503, at *9 (D. Kan. Jun. 6, 2013).

[21]*Id.*

neuropathy of the elbow. The next month, the physician noted that these conditions were stable, and caused no significant symptoms other than occasional numbness and tingling in his hands. The symptoms were treated with an occipital nerve block and by having Plaintiff wear a brace. A second EMG in September 2009, revealed the same findings, bilateral carpal tunnel syndrome and mild left ulnar neuropathy, with no worsening. In fact, Plaintiff testified at the hearing that his carpal tunnel syndrome had stayed "about the same." Moreover, despite Plaintiff's complaints of disabling wrist and hand pain, in February 2010, Plaintiff denied any problems with dexterity or coordination of his hands, and at the ALJ hearing Plaintiff testified that he had not worn the prescribed wrist splints on a regular basis for nearly two years. The ALJ properly considered Plaintiff's failure to adhere to his doctor's treatment plan and recommendation, as evidence that Plaintiff's pain was not as severe as he claimed.[22]

This evidence certainly constituted substantial evidence in support of the ALJ's RFC determination that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds and could not climb ladders, ropes or scaffolds, and could only occasionally engage in bilateral fingering. Indeed, the ALJ's RFC determination of Plaintiff's ability to lift, was more favorable than Plaintiff's own allegation that he could lift as much as forty-five pounds. The ALJ's RFC determination concerning Plaintiff's ability to lift was also more favorable than the RFC opinions rendered by the two state agency consulting physicians, whom opined that Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds. The ALJ's RFC determination that Plaintiff could never climb, was also more favorable than the state agency

---

[22]*See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (explaining that failure to follow prescribed treatment is legitimate consideration in evaluating validity of alleged impairment).

consulting physicians' opinion that Plaintiff could occasionally climb. And the ALJ's overall determination that Plaintiff could perform light work, was more favorable than the state agency consulting physicians' opinion that Plaintiff could perform medium work.

Despite the ALJ's more favorable determination of some of the limitations, Plaintiff argues that the ALJ should have specifically explained the basis for the differences in her findings and opinions of the two state agency consulting physicians. But there is no requirement that the ALJ explain with specificity why the ALJ did not adopt a physician's determination of RFC, for "[t]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."[23] Moreover, the ALJ need not obtain affirmative evidence that establishes the restrictions in the RFC finding.[24] In effect, Plaintiff's argument "ignores that it is Plaintiff's burden to prove what his *limitations* are, not the Commissioner's burden to prove what Plaintiff's capabilities are."[25]

With regard to the other RFC determinations, the ALJ fully considered and discussed Plaintiff's allegations, as well as the medical and nonmedical evidence regarding Plaintiff's cervical and upper extremity pain. And, substantial evidence supported the ALJ's findings concerning the corresponding limitations on sitting, standing, walking, as well as the ALJ's findings on cervical rotation, flexion and extension. Here, the ALJ's RFC determination was

---

[23]*Chapo*, 682 F.3d at 1288 (quoting *Howard*, 379 F.3d at 949).

[24]*Id.*; *see also Wall v. Astrue*, 561 F.3d 1048, 1068–69 (10th Cir. 2009) (upholding ALJ's findings concerning Plaintiff's mental impairment where record did not contain treating or examining medical opinions as to allegedly disabling pain disorder); *Bernal v. Bowen*, 851 F.2d 297, 302-03 (10th Cir. 1988) (holding ALJ properly made mental RFC findings without expert medical assistance).

[25]*Teneyck v. Astrue*, No. 11-1233-JWL, 2012 WL 1901285, at *9 (D. Kan. May 25, 2012) (citing *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997)).

consistent with the opinions rendered by the state agency consultants, and was supported by other evidence as well that Plaintiff can stand, walk or sit for six hours in an eight-hour workday, with a need to alternate between sitting and standing at least every thirty minutes. The ALJ also found that Plaintiff is capable of only occasional rotation, flexion, or extension of the neck. Plaintiff does not specifically challenge these findings as erroneous; there is substantial evidence supporting this part of the ALJ's RFC determination.

Medical evidence from September 2008, about a year before the alleged onset date, to June 2010, showed that there were objective clinical findings supporting Plaintiff's subjective complaints of neck and upper extremity pain. But medical evidence and nonmedical evidence showed that Plaintiff's pain and symptoms were not as intense, frequent or persistent as Plaintiff claimed. Plaintiff had a cervical MRI in August 2008 that revealed that Plaintiff had a mild annular disc bulge at C6/C7; a second cervical MRI in December 2009 revealed a moderate sized disc protrusion at C6/C7 and a slight interval increase in size when compared to the August 2008 MRI, or only mild degenerative changes. There was also disc degeneration throughout the cervical spine, but the spinal cord showed normal signal intensity.

During 2008, 2009 and 2010, Plaintiff was frequently examined and treated for these conditions, as the ALJ discussed. Throughout the course of three years of treatment, both before the alleged onset date and thereafter, clinical examinations at times revealed objective signs of pain and discomfort upon palpation, flexion or rotational movements. However, the treating physicians on many more occasions noted that Plaintiff had normal range of motion in his neck and upper extremities, normal strength in his extremities, normal muscle mass, tone and deep tendon reflexes. In September 2009, the month of the alleged onset of disability, Dr. Pau, a

treating physician who is a pain specialist, observed that Plaintiff had good cervical range of motion. And, Dr. Pau's examination of all four of Plaintiff's extremities revealed normal muscle mass, tone, strength, reflexes, and range of motion. After Plaintiff told Dr. Pau that he had filed for disability, the doctor observed that Plaintiff's cervical neck bulge was "certainly not as extensive as his reported pain levels." In January 2010, Dr. Pau observed that Plaintiff still maintained good cervical range of motion, as well as normal muscle mass, tone, strength, reflexes, and range of motion in all of his extremities. Dr. Pau characterized Plaintiff's pain as "mild discomfort." Similarly, contrary to Plaintiff's complaints of disabling arm and shoulder pain, Dr. Asokan's examination showed normal strength in all four of Plaintiff's extremities and a good range of motion in his shoulders.

The ALJ also considered the course of treatment Plaintiff received from 2008 to 2010. Plaintiff was prescribed a number of pain medications, which provided varying degrees of relief. He also received a series of epidural injections, as well as several occipital nerve blocks, which Plaintiff reported provided him with varying degrees of relief. As the ALJ noted, Plaintiff reported a forty percent improvement in his neck and headache pain after receiving a cervical analgesic injection in September 2009, and one month later, a sixty to seventy percent relief in his neck pain lasting for about one week and less headache pain. Dr. Pau also observed that pain medication helped relieve Plaintiff's pain. The ALJ considered that Plaintiff's positive response to the conservative treatment of his pain implied that his pain was not as limiting as alleged.

The ALJ further considered the fact that Plaintiff's pain responded well to treatment in late 2009 and early 2010. Indeed, as the ALJ stated, Plaintiff "consistently reported having significant pain relief when he was aggressively pursuing treatment for his impairments in late

2009 and into early 2010." This is important, because if "an impairment can be reasonably controlled by treatment or medication, it cannot be considered disabling."[26]

The ALJ properly considered the fact that despite his allegations of disabling pain, Plaintiff sought almost no treatment after February 2010 through the date of the administrative hearing in July 2011. As the ALJ noted, one would reasonably expect an individual experiencing disabling pain to at least attempt to seek continued treatment. When a claimant pursues only minimal treatment for allegedly disabling pain, that suggests that the pain is not as severe as alleged.[27]

The objective medical evidence or lack thereof, is an important factor to consider in determining credibility.[28] Accordingly, the ALJ properly concluded that the objective medical evidence indicated that Plaintiff's pain was not as severe as alleged. The ALJ properly considered the nonmedical evidence as well, including Plaintiff allegations. The ALJ thus fulfilled the duty to determine Plaintiff's RFC based on all the relevant evidence.

**Development of the Record**

Plaintiff also contends that the ALJ inadequately developed the record by not re-contacting Plaintiff's treating physicians or ordering a consultative examination. But, the "burden to prove disability in a social security case is on the claimant, and to meet this burden,

---

[26]*Wiley v. Chater*, 967 F. Supp. 446, 451 (D. Kan. 1997) (citing *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988)).

[27]*See Wall v. Astrue*, 561 F.3d at 1069 (explaining allegations of disabling pain may be properly discounted because of inconsistencies such as minimal or conservative medical treatment.).

[28]*See* 20 C.F.R. § 404.1529(c)(2) (stating objective medical evidence is useful indicator in making reasonable conclusions about intensity and persistence of claimant's symptoms and effect those symptoms may have on claimant's ability to work).

the claimant must furnish medical and other evidence of the existence of the disability."[29] Although an ALJ has a responsibility to develop an adequate record consistent with the issues raised at the hearing, an "ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development."[30]

Plaintiff's counsel never represented to the ALJ that additional evidence would be necessary to develop the record. In fact, before the ALJ hearing, Plaintiff's counsel informed the ALJ in a letter that "[t]o the best of my knowledge the record is complete." Furthermore, the ALJ analyzed all the evidence in the record, including substantial evidence suggesting that Plaintiff's impairments were not as severe as alleged, as described above. The fact that the record evidence suggested that Plaintiff's impairments were not disabling in no way indicates that the ALJ failed to properly develop the record. Rather, it signifies that Plaintiff did not carry his burden of establishing disabling impairments. Considering the substantial evidence supporting the ALJ's decision, together with Plaintiff's counsel's failure at the hearing to indicate that the record required further development, the ALJ adequately developed the record.

## V.  Conclusion

Because there was substantial evidence of record that supported the ALJ's RFC determination that Plaintiff could work and was not disabled, the Court finds that the decision of defendant should be affirmed.

---

[29]*Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004).

[30]*Id.*

12

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **AFFIRMED.**

**IT IS SO ORDERED.**

Dated: October 9, 2013

                                                  S/ Julie A. Robinson

                                                  JULIE A. ROBINSON

                                                  UNITED STATES DISTRICT JUDGE